# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

DENNIS FEYKA,                                )
                                             )
    Appellant-Defendant,            )
                                             )
      vs.                         )    No. 49A02-1108-CR-703
                                             )
STATE OF INDIANA,                            )
                                             )
    Appellee-Plaintiff.             )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1006-FA-45550

**August 13, 2012**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

Dennis Feyka appeals his conviction of Class A felony child molesting.[1] He argues the prosecutor's comments during closing argument were fundamental error and the evidence was insufficient to convict him because the victim's testimony was incredibly dubious. We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment are that during spring break of 2010, Feyka's daughter hosted a sleepover for a number of girls at Feyka's house. T.B., then nine years old, attended the sleepover. The other girls in attendance were older than T.B., and they spent the evening in a locked bedroom while T.B. remained in the living room. T.B. slept on one part of an L-shaped couch, and Feyka slept on the other part. On three occasions during the night, Feyka placed his mouth on T.B.'s vagina. When school resumed after spring break, T.B. attended a "good touch/bad touch" program and then reported the incident. The State charged Feyka with three counts of Class A felony child molesting, and a jury found him guilty of all three counts. The trial court merged Counts Two and Three into Count One, then entered a judgment of conviction on that count.

## DISCUSSION

1.     Prosecutorial Misconduct

Feyka claims the prosecutor committed misconduct during closing argument by

---

[1] Ind. Code § 35-42-4-3.

[2] We heard oral argument July 11, 2012, at the Statehouse. We commend counsel on the quality of their advocacy.

referring to the fact that Feyka did not testify. In reviewing a claim of prosecutorial misconduct, we must determine whether the prosecutor engaged in misconduct, and if so, whether the misconduct had a probable persuasive effect on the jury. *Ritchie v. State*, 809 N.E.2d 258, 268 (Ind. 2004), *reh'g denied, cert. denied*. A claim of improper argument to the jury is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated occurrences of misconduct, which would evidence a deliberate attempt to improperly prejudice the defendant. *Id.* at 269.

Feyka did not object to the statements he now alleges were error. Failure to object to alleged misconduct precludes appellate review of the claim, *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002), unless the alleged misconduct amounts to fundamental error. *Id.* To demonstrate fundamental error, the defendant must establish not only prosecutorial misconduct but also the additional grounds for fundamental error. *Id*. at 818. To be fundamental error, the misconduct must have made a fair trial impossible or been a clearly blatant violation of basic and elementary principles of due process that presents an undeniable and substantial potential for harm. *Id.* at 817.

The Fifth Amendment to the United States Constitution prohibits the State from commenting on a defendant's failure to testify in his own defense. *Owens v. State*, 937 N.E.2d 880, 893 (Ind. Ct. App. 2010), *reh'g denied, trans. denied*. Such a comment violates a defendant's privilege against compulsory self-incrimination if a jury could reasonably interpret the comment as an invitation to draw an adverse inference from a defendant's silence. *Boatright v. State*, 759 N.E.2d 1038, 1043 (Ind. 2001). But if the prosecutor's

3

comment in its totality addresses other evidence, and not the defendant's failure to testify, it is not grounds for reversal. *Owens*, 937 N.E.2d at 893. The prosecutor may, for example, comment that the State's evidence is uncontradicted without violating the defendant's Fifth Amendment rights. *Id*.[3]

Feyka points to three parts of the State's closing argument during which he claims the prosecutor impermissibly referred to Feyka's choice not to testify in his own defense. None of those references amounted to fundamental error.

First, at the beginning of closing argument, the prosecutor said, "During *voir dire*, we talked about we're only going to present to you – there are two people that know what happened. And [T.B.] told you what happened." (Tr. at 271.)

Second, in Feyka's closing argument, counsel argued Feyka's innocence based on the State's inability to present a witness to corroborate T.B.'s testimony. During rebuttal of that argument, the prosecutor said, "Of course we're not going to have anybody to corroborate [T.B.]'s testimony that [Feyka] licked her vagina; that the hair was pinching and it hurt her. No, because no one was there for that. He's not going to do that."[4] (*Id*. at 294-95.)

---

[3] Feyka urges us to analyze the prosecutor's statements using the five factor test set forth in *Bieghler v. State*, 481 N.E.2d 78, 92 (Ind. 1985). Because the State did not address those factors, Feyka asserts in his Reply Brief, the State has waived its argument and Feyka need show only *prima facie* error to gain reversal. *See Nat'l Oil & Gas, Inc. v. Gingrich*, 716 N.E.2d 491, 496 (Ind. Ct. App. 1999) (failure to respond to an issue raised by an appellant is akin to the failure to file a brief, and under such circumstances we may reverse the unaddressed issue on a showing of *prima facie* error). As *Bieghler* involved an analysis of harmless error rather than fundamental error, and post-arrest silence rather than a comment on failure to testify, we cannot find the State waived its argument regarding prosecutorial misconduct by declining to address *Bieghler*.

[4] The State asserts the prosecutor's statement "He's not going to do that" was not a reference to Feyka's failure to testify, but meant Feyka would not have molested T.B. in front of witnesses. The State offers no explanation or citation to the record to support that apparent speculation about what the prosecutor meant.

Finally, the prosecutor stated at the end of her rebuttal argument:

> Remember the rules I set down for her? If you don't know, say so. If you don't remember, say so. And she followed those rules. She told you the absolute truth. And the very, very, very important thing is there is no one contesting her testimony. Her testimony is uncontested. You can take it to the bank.[5]

(*Id*. at 296) (footnote added).

Feyka likens his circumstances to those in *Owens*, where the prosecutor said during closing argument: "Ultimately, you can rely on [C.R.'s] testimony. And in all honesty, in large part, if not exclusively, that's what you have to rely on. Because the reality is, other than Mr. Owens, she is the only one who knows what happened to her that night." *Owens*, 937 N.E.2d at 894. We held:

> The prosecutor highlighted the fact that C.R.'s testimony was the only evidence before the jury and then explicitly referred to Owens by name and directly compared his knowledge to C.R.'s. We conclude that the jury reasonably could have interpreted the prosecutor's comment as an invitation to draw an adverse inference from Owens's failure to testify.

---

[5] Feyka asserts in his reply brief that the "you can take it to the bank" statement was "vouchsafing the credibility of the State's only witness to the alleged incident, a witness who admitted to being told by her mother, in part, what to say." (Appellant's Reply Br. at 3.)

When it is alleged the prosecutor made an improper statement in closing argument, the correct procedure is to ask the trial court to admonish the jury. *Dumas v. State*, 803 N.E.2d 1113, 1117 (Ind. 2004). If the party is not satisfied with the admonition, he should move for mistrial. *Id.* Failure to request an admonition or to move for mistrial results in waiver. *Id*. Feyka did neither, and offers no argument or explanation on appeal why "take it to the bank" amounted to vouchsafing.

It is inappropriate for a prosecutor to make an argument that takes the form of personally vouching for a witness. *Lainhart v. State*, 916 N.E.2d 924, 938 (Ind. Ct. App. 2009). Indiana Professional Conduct Rule 3.4(e) provides a lawyer "shall not . . . in trial . . . state a personal opinion as to the . . . credibility of a witness." *Id*. A prosecutor may comment on the credibility of the witnesses only if the assertions are based on reasons that arise from the evidence. *Id*.

As noted above, this allegation of error is waived for appeal, and as explained below, the prosecutor's statements did not amount to fundamental error.

As for Feyka's allegation T.B. was "a witness who admitted to being told by her mother, in part, what to say," (Appellant's Reply Br. at 3), Feyka notes T.B. was asked at trial "so [your mother] helped you go over what you should say and things like that?" and she replied, "[a] little bit." (Tr. at 137.)

*Id.*

In *Davis v. State,* 685 N.E.2d 1095 (Ind. Ct. App. 1997), *reh'g denied, cert. denied*, Davis fled after he crashed a car into a tree. When police asked him why he fled, Davis said, "I took it." *Id.* at 1097. At trial, the police officer testified as to what Davis said, and Davis did not testify. During closing argument, the prosecutor said, "Davis said he took the car. There is nothing to controvert that. There is no evidence saying that isn't so. There's not even an argument that he didn't say that." *Id.* at 1089 (brackets omitted). That statement was improper:

> By calling attention to the defendant's alleged admission and pointing out that there was no claim to the contrary, the prosecutor indirectly brings to the jury's attention the fact that Davis did not deny this allegation. Davis was the only one who could have denied that this statement was made since only he and Officer Kaszas were present at the time. Thus, a reasonable jury could have taken that comment as an invitation to consider Davis' failure to testify as an inference of guilt. We conclude that the prosecutor's comments were improper.

*Id.* at 1098.

In *Owens*, 937 N.E.2d at 894, we contrasted statements that were found to be comments on the evidence, not on a defendant's failure to testify, *e.g.*, *Hopkins v. State,* 582 N.E.2d 345, 347-48 (Ind. 1991) (prosecutor's statement that "it is certainly worthy of comment that you never heard any testimony during this trial that the defendant was anywhere else" was a comment on evidence from five different witnesses to whom defendant made admissions concerning the crime and not on the absence of testimony from the defendant), *reh'g denied*; *Channell v. State,* 658 N.E.2d 925, 931–32 (Ind. Ct. App. 1995)

6

(prosecutor did not impermissibly refer to defendant's failure to testify where prosecutor stated, "What testimony did you hear from that witness stand that this Defendant consumed any alcohol or had any drug on that day? Absolutely none. There's no testimony he had any alcohol or any drug or was talking under the influence of alcohol or drugs.") (brackets omitted), *reh'g denied*, *trans. denied.*

The statement in *Owens* was improper, but it was not fundamental error because it did not make a fair trial impossible, amount to a blatant violation of basic and elementary principles of due process, or create an undeniable and substantial potential for harm. *Owens*, 937 N.E.2d at 894. We noted *"*the narrow applicability of the fundamental error doctrine," *id.*, that the prosecutor's comment was "an isolated statement," *id.*, and as to the evidence of Owens's guilt, the victim testified and was vigorously cross-examined and recross-examined. *Id.* The prosecutor's improper comment therefore was not fundamental error. *Id.*

The prosecutor's comments about Feyka were not fundamental error for the same reasons. As did defense counsel in *Owens*, Feyka vigorously cross-examined the witnesses, including the victim. The jury could have considered the prosecutor's comments as commentary on the nature of the evidence presented, which is permitted. *See Martinez v. State*, 549 N.E.2d 1026, 1028 (Ind. 1990) (State permitted to comment on the uncontradicted nature of the evidence without violating defendant's Firth Amendment rights). We cannot say the references to Feyka's failure to testify were fundamental error.

2.      Sufficiency of the Evidence

When reviewing sufficiency of evidence to support a conviction, we consider only the

7

probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.* at 147.

Feyka argues the State did not present sufficient evidence to convict him of Class A felony child molesting because his conviction "was based solely on the uncorroborated and inherently dubious testimony of the child in question and was contradicted in material ways by others present in the house."[6] (Br. of Appellant at 11.) Under the "incredible dubiosity" rule, we may "impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted 'inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Rodgers v. State*, 422 N.E.2d 1211, 1213 (Ind. 1981). We will reverse a conviction if the sole witness presents inherently improbable testimony and there is no circumstantial evidence of the defendant's guilt. *White v. State*, 706 N.E.2d 1078, 1079-80 (Ind. 1999). Application of the incredible dubiosity rule "is rare

---

[6] The State recounts at length T.B.'s trial testimony, and asserts the alleged facts to which she testified are sufficient to support the convictions. But Feyka does not argue otherwise; instead, he argues T.B.'s testimony was incredibly dubious.

8

and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007).

Those cases where we have found testimony inherently improbable or of incredible dubiosity have involved either situations where the facts as alleged "could not have happened as described by the victim and be consistent with the laws of nature or human experience," *Watkins v. State*, 571 N.E.2d 1262, 1265 (Ind. Ct. App. 1991), *aff'd in part and vacated in part*, 575 N.E.2d 624 (Ind. 1991), or the witness was so equivocal about the act charged that his uncorroborated and coerced testimony "was riddled with doubt about its trustworthiness." *Id.* The case before us does not fall within either category.

To support his argument T.B.'s testimony was incredibly dubious, Feyka first notes the State conceded in closing argument that her testimony was not corroborated: "we're not going to have anybody to corroborate [T.B.'s] testimony . . . no one was there for that." (Tr. at 295.) He next notes much of T.B.'s testimony was inconsistent with that given by another witness. T.B. testified she was molested during the nighttime, but a guest at the sleepover, thirteen-year-old L.G., testified everyone stayed up until 7:00 a.m., and during that time she did not see Feyka do anything to the victim. T.B. testified L.G. and the other girls at the sleepover stayed in a locked bedroom all night, while she and Feyka were in the living room. Feyka offers no explanation why conflicting testimony by another witness necessarily renders T.B.'s own testimony incredibly dubious, and we decline to so hold.

Feyka also notes T.B. testified she acted like she was asleep when Feyka molested her,

9

and that she is "a really good faker." (*Id.* at 98.)  In a pretrial interview, T.B. told an investigator she did not know whether the incident was real or a dream.  T.B. testified at trial she knew the molestation was real and not a dream because she can control what happens in her dreams, but she could not control what happened with Feyka.  At various times, T.B. testified each instance of molestation lasted "about like a minute," (*id*. at 122), and "like five, maybe less." (*Id*.)  But in a prior statement she had said one instance lasted fifteen minutes and another lasted eighteen.  Finally, Feyka notes T.B. was initially unable to identify him in court.  When asked, "Do you see [Feyka] in the court room today," she replied "Uh.  I don't know." (*Id*. at 100.)  After she was prompted to "look around and take your time," (*id*.), she pointed to Feyka.

T.B.'s testimony provided ample evidence to support Feyka's conviction.  The uncorroborated testimony of the victim, even if the victim is a minor, is sufficient to sustain a conviction of child molesting, *Morrison v. State*, 462 N.E.2d 78, 79 (Ind. 1984), and it is within the province of the trier of fact to reject evidence to the contrary.  *See, e.g*., *Bennett v. State*, 409 N.E.2d 1189, 1191 (Ind. Ct. App. 1980) (conflict between the State's case and a defendant's alibi is a matter to be resolved by the jury, whose decision will not be overturned on appeal if there is substantial evidence of probative value in the record to support it).

This is true even if there are inconsistencies in the child victim's own testimony.  *See, e.g., Surber v. State*, 884 N.E.2d 856, 869 (Ind. Ct. App. 2008) (testimony of six-year-old victim was not so incredibly dubious or inherently improbable that no reasonable person could believe it; "[w]hile there are inconsistencies between some of [the child's] statements,

10

the inconsistencies 'are appropriate to the circumstances presented, the age of the witness, and the passage of time between the incident and the time of her statements and testimony.'" (quoting *Fajardo v. State,* 859 N.E.2d 1201, 1209 (Ind. 2007)).

We acknowledge the conflicting testimony and some inconsistencies in T.B.'s own statements. However, we cannot find equivocal, coerced, or inherently contradictory T.B.'s statements establishing the elements of the crime and why she knew Feyka was the person who molested her. That T.B. did not immediately identify Feyka at trial is insignificant; she testified she had known Feyka for seven or eight years and he was a friend of her parents. As for T.B.'s pretrial statement she did not know whether the incident was a dream, the State notes the prosecutor questioned T.B. at length and T.B. testified she was positive it was real.

The jury, having heard T.B.'s testimony and having had the opportunity to determine the credibility of the witnesses, found Feyka guilty of molesting T.B. We must decline Feyka's invitation to invade the province of the jury by reweighing the evidence and reassessing witness credibility.

## CONCLUSION

As alleged prosecutorial misconduct was not fundamental error and there was sufficient evidence to support Feyka's conviction, we affirm.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.