**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 03 2014, 8:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RANDY M. FISHER**
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JESSIE L. JOHNSTON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.  02A05-1308-CR-395 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1302-FA-3

February 3, 2014

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Jessie Johnston appeals his conviction on Counts I and II for Child Molesting[1] as a class A felony, Count III for Child Molesting[2] as a class C felony, and Counts IV and V for Contributing to the Delinquency of a Minor,[3] a class A misdemeanor. More particularly, Johnston contends that the evidence was insufficient to support his convictions and argues that the testimony of J.M., the victim, who was a minor, was incredibly dubious. Additionally, Johnston asks that we find that his sentence was inappropriate in light of the nature of his offenses and his character. We conclude that J.M.'s testimony was not incredibly dubious and that there was sufficient evidence to convict Johnston. Moreover, we do not find his sentence to be inappropriate. Accordingly, we affirm the judgment of the trial court.

FACTS

At some point in the fall of 2012, Johnston and his wife, Latrisha, asked J.M. to help them care for their children. J.M., who was fourteen at the time, helped care for the children as a babysitter, but she was not left alone with the children. As payment for her babysitting services, the Johnstons provided J.M with a cell phone and paid for its use. J.M. testified that, during this time, Johnston often texted her on the cell phone and that he gave her a tattoo. J.M. testified that she witnessed Johnston and his friends smoking

---

[1] Ind. Code § 35-42-4-3.

[2] I.C. § 35-42-4-3

[3] Ind. Code § 35-46-1-8.

2

marijuana. Both Johnston and Latrisha have medical marijuana prescriptions from Michigan. Johnston was over twenty-one and was aware of J.M.'s age.

Sometime in the middle of September, Latrisha traveled to Michigan one weekend to visit her family. Johnston asked J.M. to stay for the weekend and help with the children. J.M. testified that she asked her mother for permission to stay and that she lied to her mother, telling her Latrisha would be home. J.M testified that Johnson provided her and a friend, Anthony, with marijuana.

J.M. testified that when Anthony left, she and Johnston went into the house, where he hugged her. They then sent the children upstairs and smoked more marijuana in Johnston's bedroom. J.M. testified that Johnston told her that she was pretty and then began hugging and kissing her. They were interrupted by the children but then returned to the bedroom, where Johnston continued kissing J.M. and told her that if she had sex with him it would be easier for her to have sex with boyfriends in the future. They then removed their clothing and Johnston put lubricant on himself and then had sexual intercourse with J.M, which hurt her. They then smoked more marijuana, and, at midnight, J.M. left to go to her cousin's house.

J.M testified that, the next day, Johnston texted her that he wanted her to come over, but she ignored him. Johnston texted her again that afternoon, and she returned to babysit the children. When Johnston asked her if she was going to tell anyone about having sexual intercourse with him, she told him that she would not. Johnston then asked her to let him know if she did tell anyone so that he could run away. That day, J.M

played with the children. Later, she, Anthony, and Johnston rode Johnston's moped and played video games. J.M. testified that Johnston offered her beer, but she declined. The three ate pizza, and Johnston gave J.M. a frozen alcoholic drink; J.M. stated that she had some of the drink. Later that evening, Anthony left, and J.M. and Johnston sent the children to bed. J.M. called home and once again lied to her mother, telling her that Latrisha was there in order to obtain permission to stay the night.

J.M. testified that Johnston hugged her again that night and that they kissed on the couch and then went to the bedroom, where Johnston again had sexual intercourse with J.M. J.M testified that she bled on the sheets and stated that Johnston put the sheets in the washer with bleach and used bleach on the mattress. When that did not work, Johnston threw the sheets away. After Johnston had intercourse with J.M., they remained undressed in the bedroom, and one of Johnston's friends, Alex Groover, entered the bedroom. Upon seeing them naked, he immediately left, but he testified at Johnston's trial that J.M. appeared to be underage and that he and Johnston were the only adults in the house.

J.M. stayed at the house and watched a movie with Johnston. She then went to her cousin's house. That was the last time that J.M. went to Johnston's home. However, J.M. testified that Johnston continued to text her until J.M. gave the cell phone that Johnston provided her to her grandmother. Before J.M. gave the phone to her grandmother, she deleted the texts from Johnston. At this time, J.M. did not tell anyone about having sex with Johnston.

4

About two weeks later, J.M. noticed bumps on her private area, and had trouble urinating. She told her mother that she has been having sex with a boy named Johnny, because she did not want Johnston to get into trouble. When J.M.'s mother took her to the doctor, she did not tell anyone about Johnston. However, J.M. eventually told her mother about intercourse with Johnston, and her mother called the police on October 8, 2012. J.M. then called Johnston to warn him that she had told her mother.

On October 17, 2012, J.M. was examined by Leslie Cook, a nurse at the Fort Wayne Sexual Assault Treatment Center. J.M. told Leslie about having sex with Johnston. In early November, Detective Sandon Quate contacted Johnston to arrange an interview. That night, Johnston did not show up at his office. Johnston and his family left for Michigan and then went to Tennessee, where Johnston was apprehended by United States Marshalls.

The State charged Johnston with two counts of child molesting, a class A felony, one count of class C felony child molesting, and two counts of contributing to the delinquency of a minor, a class A misdemeanor. On June 18, 2013, Johnston's jury trial commenced. Johnston testified that he had not had intercourse with J.M., and that he had not been alone in the home with J.M., and that his ex-wife, Pamela Johnston, had been in the home for the entire period Latrisha had been gone. On June 19, 2013, the jury found Johnston guilty on all counts. On July 19, 2013, the trial court sentenced Johnston to forty-five years on Counts I and II child molesting as a class A felony, to six years on Count III, class C felony child molesting, and to one year on Counts IV and V of

contributing to the delinquency of a minor, all to run concurrently for a total sentence of forty-five years.

Johnston now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

Johnston claims that the evidence was insufficient to support his convictions for child molesting and contributing to the delinquency of a minor. He argues that his convictions should be set aside because J.M.'s testimony was not credible.

At the outset, we address Johnston's contention that J.M.'s testimony falls under the "incredible dubiosity" doctrine. The incredible dubiosity doctrine applies when "the sole witness presents inherently improbable testimony and there is no circumstantial evidence of the defendant's guilt." White v. State, 706 N.E.2d 1078, 1079-80 (Ind. 1999). "Application of the incredible dubiosity rule is 'rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.'" Feyka v. State, 972 N.E.2d 387, 392 (Ind. Ct. App. 2012) (quoting Fajardo v. State, 859 N.E.2d 1201, 1208 (Ind. 2007)). While Johnston argues that J.M.'s testimony was contradictory in that there were discrepancies between her trial testimony and her deposition, this is not the standard for the incredible dubiosity doctrine. We do not find J.M.'s testimony to be "inherently improbable," and furthermore, the incredible dubiosity doctrine applies only where there is no circumstantial evidence of the defendant's guilt. White, 706 N.E.2d at 1079. Here, there

6

is circumstantial evidence to corroborate J.M.'s testimony, including Alex Groover's testimony that J.M. seemed to be underage and Latrisha Johnston's trip to Michigan in September. We therefore decline Johnston's request to find J.M.'s testimony to be incredibly dubious. Id.

As Johnston has not established that J.M.'s testimony was incredibly dubious, we apply the usual standard of review for sufficiency of the evidence claims. When reviewing a sufficiency of the evidence claim, we will not reweigh the evidence or assess the credibility of witnesses. Delagrange v. State, 981 N.E.2d 1227, 1230 (Ind. Ct. App. 2013). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. Id. The conviction will be affirmed if there is substantial evidence of probative value to support the conviction. Id.

Here, J.M. testified that Johnston gave her marijuana and alcohol. Tr. p. 73-74, 85. When she testified, she stated that the marijuana came from Michigan, and the Johnstons both testified that they had medical marijuana prescriptions from Michigan. Id. at 73 -74, 166-67, 236-37. J.M testified that Johnston had offered her beer, but when she refused, he gave her a frozen alcoholic drink. Id. at 84-85.

Additionally, J.M. testified that Johnston had hugged her and kissed her. Id. at. 77, 86-87. She testified that Johnston, on two separate occasions, had sex with her while his children were in the home. Id. at 78-80, 87-88. She told the trial court that Johnston told her that "if we do it now then in the future when you get a boyfriend and it won't hurt." Id. at 77-78. In corroboration with J.M.'s testimony, Johnston's friend Alex

7

Groover testified that he had walked in on Johnston and J.M. in Johnston's bedroom and that the two had been naked. Id. at 186-88. In light of the testimony above, we find that the evidence is sufficient to support Johnston's convictions for child molesting and contributing to the delinquency of a minor.

## II. Sentencing – Abuse of Discretion

Johnston argues that the trial court erred when it failed to take into consideration certain mitigating factors, including Johnston's minor dependent children; his criminal history; his history of substance abuse; and his support system.

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). Indeed, a trial court "may impose any sentence that is: (1) authorized by law; and (2) permissible under the Constitution of the State of Indiana . . . regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Ind. Code § 35-38-1-7.1(d). A trial court abuses its sentencing discretion if its decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. Childress v. State, 848 N.E.2d 1073, 1078 (Ind. 2006).

When imposing the sentence, a trial court is not obligated to find a circumstance to be mitigating merely because it is advanced by the defendant. Felder v. State, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007). An allegation that the trial court failed to identify

8

or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. Anglemyer, 868 N.E.2d at 493. A trial court does not abuse its discretion by failing to consider a mitigating factor not argued at sentencing, and it has no obligation to weigh aggravating and mitigating factors against each other. Id. at 491-92.

Johnston first argues that, because he has seven children, his incarceration would create undue hardship for the children. However, Johnston was unemployed at the time of his crime and has a questionable employment history. PSI p. 5. He was also behind in his child support payments and was receiving food stamps. Id. at 4-5. Furthermore, had the trial court given Johnston the minimum twenty-year sentence, he would still be incarcerated until the children reached the age of majority. Therefore, it does not follow that Johnston would have been a reliable source of income to the children.

Johnston next contends that his criminal history and history of substance abuse should have been taken into account as mitigating factors. However, the trial court found Johnston's criminal history, which included a prior felony theft conviction and a probation violation in that case, to be an aggravating factor in this case. Sent. Tr. p. 9. As regards to Johnston's contention that his history of substance abuse should be a mitigating factor, we do not find that Johnston has offered evidence that he has a substantial substance abuse problem, instead claiming to have engaged in only sporadic use of marijuana and alcohol. PSI p. 6.

9

Finally, Johnston argues that his support system should have been considered a mitigating factor. However, as the State points out, Johnston had this support system at the time these offenses were committed. It does not follow that, if his support system failed him in this case, it will prevent him from committing another offense.

We do not find that the trial court erred in its consideration of mitigating factors.

### III. Sentencing – Appropriateness of Sentence

Johnston claims that his forty-five-year sentence was inappropriate in light of the nature of his offenses and his character. The advisory sentence for a class A felony is thirty years, with a sentencing range between twenty and fifty years. Ind. Code § 35-50-2-4. As outlined in Indiana Rule of Appellate Procedure 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. In reviewing a Rule 7(B) appropriateness challenge, we defer to the trial court. Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Under Rule 7(B), the question is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). The defendant bears the burden of persuading this Court that his sentence is inappropriate. Id.

When examining the nature of the offense, the evidence demonstrates that Johnston took advantage of a minor to whom he was in a position of trust. He provided the victim with alcohol and drugs in order to make her more pliable; he manipulated her, told her she was pretty, and stated that having sex with him would make sex with later

10

boyfriends easier. Tr. p. at 78-80, 87-88. He knew that J.M. was a minor, and he used her position as his babysitter to his advantage. Johnston's nature of the offense argument avails him of nothing.

Turning to Johnston's character, we must consider that, on two separate occasions, he chose to perpetrate his crimes while his minor children were in the home. Id. at 77. He also asked J.M to keep secrets from her mother, asking her not to tell anyone that they had engaged in sexual intercourse. Id. at 83. Johnston has a criminal record, and is in arrears on his child support payments. PSI p. 4-5. Under these circumstances, we do not find that the sentence was inappropriate in light of the nature of Johnston's character.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.