## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2019, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Dennis M. Feyka
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis M. Feyka,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | December 31, 2019<br><br>Court of Appeals Case No.<br>18A-PC-1917<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>The Honorable Jeffrey L. Marchal, Magistrate<br><br>Trial Court Cause No.<br>49G06-1006-PC-45550 |

**Brown, Judge.**

[1] Dennis Feyka appeals the denial of his petition for post-conviction relief. We affirm.

## Facts and Procedural History

[2] The relevant facts as discussed in Feyka's direct appeal follow:

> [D]uring spring break of 2010, Feyka's daughter hosted a sleepover for a number of girls at Feyka's house. T.B., then nine years old, attended the sleepover. The other girls in attendance were older than T.B., and they spent the evening in a locked bedroom while T.B. remained in the living room. T.B. slept on one part of an L-shaped couch, and Feyka slept on the other part. On three occasions during the night, Feyka placed his mouth on T.B.'s vagina. When school resumed after spring break, T.B. attended a "good touch/bad touch" program and then reported the incident.

*Feyka v. State*, 972 N.E.2d 387, 389 (Ind. Ct. App. 2012), *trans. denied*.

[3] The State charged Feyka with three counts of child molesting as class A felonies. *Id.* On June 20 and 21, 2011, the court held a jury trial. At trial, Attorney Nicholas McGuinness and Attorney Jeffrey Neel represented Feyka. On direct examination, T.B. testified that a close family member also licked her private with his tongue like Feyka did. On cross-examination, she testified that there were three other adults in the room at Feyka's residence. A forensic child interviewer testified that T.B. said that her brother and her played a truth or dare game and he had dared her to lick his private part.

[4] Indianapolis Metropolitan Police Detective Grant Melton testified that he received contact information for Gary Broge, Carol Carter, and Feyka's daughter. When asked what information he received from Carter and Broge that was helpful to his investigation, Attorney Neel objected based upon hearsay, and the court sustained the objection.

[5] After the State rested, Feyka's counsel moved for a directed verdict, which the trial court denied. The court asked Feyka's counsel if he intended to present evidence, and he answered: "I believe so. We're still not positive." Trial Transcript Volume II at 261. After a recess, the court asked again, and Feyka's counsel indicated that the defense would not present evidence.

[6] The jury found him guilty of all three counts. *Feyka*, 972 N.E.2d at 389. The court merged Counts II and III into Count I and entered a judgment of conviction on that count. *Id.*

[7] On direct appeal, Feyka argued that the prosecutor's comments during closing argument were fundamental error and the evidence was insufficient to convict him because the victim's testimony was incredibly dubious. *Id.* This Court affirmed. *Id.*

[8] On December 19, 2012, Feyka, by counsel, filed a petition for post-conviction relief alleging that he was denied effective assistance of trial counsel because counsel failed to call approximately twelve people who were present when the alleged acts occurred. On June 3, 2013, Feyka filed an amended petition adding allegations that his trial counsel failed to investigate whether T.B.'s

parents were threatened or coerced to present T.B. for testimony, whether T.B. was coached in an inappropriate fashion during a period she was taken from her parents' custody, and whether the State used CHINS proceedings to further its prosecution. He also alleged that agents or employees of the State threatened T.B.'s parents to cooperate and failed to disclose that T.B.'s parents had been threatened with CHINS proceedings and that T.B. had been taken from their care.

[9] On May 16, 2013, the court held a hearing. Feyka's post-conviction counsel introduced an order on disposition of the CHINS matter, a deposition "entered as an exhibit by agreement of the parties in lieu of live testimony of" Feyka's daughter, and the record from the direct appeal. Post-Conviction Transcript Volume II at 3. The court admitted the record and the deposition. After some discussion regarding admission of the CHINS order, Feyka's counsel moved to amend the petition and requested a continuance, and the court granted the continuance.

[10] On October 31, 2014, the State filed a Request for Attorneys-Only PCR Status Hearing to address Feyka's intent to depose T.B., which the court later granted. On November 20, 2014, the court held a hearing. Feyka's counsel asserted that there was a family member who was accused of acts in the same period who later pled guilty to charges. He argued that "[t]he reason I want to depose the child witness are, one, to ask whether anyone had asked her about the other matter; and two, to find out whether my client's counsel specifically had asked her any questions in preparation for trial or deposed her; and then, third,

aspects of that case." *Id.* at 23. He also asserted that "there may be inconsistencies in the child's testimony before the trial court that I believe are relevant for this Court to consider as far as the credibility of the witnesses and why that wasn't impeached at trial." *Id.* Upon questioning by the court as to what has to come from the child as opposed to other sources, Feyka's counsel answered: "[T]he specifics of the acts by the family member; and also, whether actors of the State, police officer or whomever, had asked her about that other incident, and also whether they put undue pressure on her to testify." *Id.* at 24. The court indicated that it did not want to rule from the bench and confirmed that it still had an evidentiary hearing scheduled. On December 1, 2014, the court entered an order prohibiting Feyka from conducting a discovery deposition of T.B. "who was and is a minor child." Appellant's Appendix Volume II at 35.

[11] On February 11, 2016, the court held a hearing. Feyka's counsel indicated two of his subpoenaed witnesses did not appear but that he could make an offer of proof because their testimony would have been fairly simple and duplicative of other previously called witnesses. Feyka's counsel indicated that the court would have Attorney McGuiness's affidavit within fourteen days, and the court stated that it would be marked as Petitioner's Exhibit D when it came in. The prosecutor stated: "My expectation based upon conversations with counsel is that Mr. McGuiness's affidavit is going to essentially say that he essentially does not remember any of the specific details of the case, basically, handling the case." Post-Conviction Transcript Volume II at 33. Feyka's counsel replied:

"Or any strategic or tactical reasons for having not done things. And that's what we anticipate." *Id.*

[12] Feyka's counsel provided an offer of proof with respect to the testimony of Carter and Broge who had not appeared for the hearing. He stated that Carter would have testified that she was present in the house on the night in question, was working at a computer the entire night, was within sight of the couch, saw nothing untoward occur, and she was threatened that if she testified on Feyka's behalf that her child would be taken from her. He also stated that Broge would have testified that he fell asleep part of the night at the house, saw Carter sitting at the computer, Feyka wanted to switch places with him, he had about one to two hours of sleep that night, and that the only improper thing he saw was that "the little girl . . . would not leave Mr. Feyka alone." *Id.* at 34-35.

[13] Feyka's post-conviction counsel questioned Feyka who testified that Attorney McGuiness represented him at trial and that "Mr. McGuiness didn't tell me anything until the day of the trial that we weren't putting up a defense." *Id.* at 37. He testified that he sat down with Attorney McGuiness a week before the trial and "went through who [he] wanted to put on the stand," that Attorney McGuiness "said okay," and "[t]hen we come to trial, and all the sudden we're not putting up a defense, and I didn't know what to say." *Id.* at 37-38. He indicated that he had at least five witnesses including Carter, Broge, L., and two other girls. He later mentioned the other people who were in his house that night including his daughter, T., Jay, who passed away, and Jay's wife. He stated that he wanted to testify at trial and he would have testified that nothing

happened that night. He also testified that he told Attorney McGuiness to object at certain points during the trial when the prosecutor was leading witnesses, and he refused to object.

[14] The State called Detective Melton who testified that T.B.'s brother was arrested and charged during the same time period but was not prosecuted in order to coerce T.B.'s parents. He testified that he went to T.B.'s residence on November 22, 2010, to deliver subpoenas for a deposition and gave the subpoenas to a person with instructions for T.B.'s parents to give the deputy prosecutor a call. He stated that there was no response from T.B.'s parents on December 2, 2010, regarding the deposition that was to occur on December 3, 2010. He indicated that they decided to go to the school to talk to T.B. because there was some concern about whether Feyka had still been coming to the house given that he and his brother were close friends with T.B.'s family. He testified that T.B. told them at school that she and her brother had played truth or dare and "licked each other's privates." *Id.* at 48. He stated that he called T.B.'s mother and that T.B.'s brother admitted the allegations. He indicated that a CHINS action involving T.B.'s family began on December 2, 2010, when the allegations against T.B.'s brother surfaced, and T.B.'s parents indicated, when asked why they had not responded, that they "just wanted it all to go away." *Id.* at 50. He indicated that anything that happened in "that case had really no – was not driven by the case involving Dennis Feyka." *Id.* at 51. He testified that he attempted to speak with Feyka's daughter but did not speak with her. He indicated he interviewed Carter and Broge. The court and the

parties discussed Carter and Broge's absence, and the court continued the hearing.

[15] On April 13, 2017, the State filed a motion indicating that Feyka intended to attempt to call T.B. as a witness at the evidentiary hearing, asserting that his attempt to present her testimony was a blatant abuse of the post-conviction review process, and requesting that the court quash Feyka's subpoena or hold a hearing on the issue. On April 18, 2017, the court entered an order granting the motion and ordering a hearing to be held on the matter on April 20, 2017. On April 20, 2017, Feyka's counsel requested a continuance of the evidentiary hearing, and the court rescheduled the hearing.

[16] On October 19, 2017, the court continued the evidentiary hearing. Feyka's counsel stated that he did not believe that there was any further evidence to produce, that the only other matter "in terms of evidence would be an affidavit from trial counsel," and that he and the prosecutor agreed "to submit that to the Court in lieu of testimony of trial counsel." *Id.* at 66.

[17] On June 7, 2018, the court denied Feyka's petition. The court found Feyka's testimony not to be credible and afforded it no weight. It found that the CHINS proceeding and the prosecution of T.B.'s brother were not undertaken as a means of leverage or to intimidate T.B.'s parents and concluded that the State did not engage in any misconduct through its agents. On July 9, 2018, Feyka filed a motion to correct error, which the trial court later denied.

### *Discussion*

[18]  Before discussing Feyka's allegations of error, we observe that he is proceeding *pro se*. Such litigants are held to the same standard as trained counsel. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[19]  Without citation to the record, Feyka asserts that the post-conviction court should have allowed counsel to investigate, "especially considering that the witness has admitted to some of these allegation elements in open court and in front of the jury." Appellant's Brief at 8. He asserts that the post-conviction

court abused its discretion by denying post-conviction counsel "depositions and or subpoenas of supporting witnesses foreclosing counsel from pursuit of multiple claims contained within" his petition and mentions T.B. and her parents. *Id.* at 8. He asserts his post-conviction counsel was ineffective for failing to present evidence from trial counsel.

[20] The State argues the post-conviction court did not abuse its discretion by prohibiting Feyka from deposing the victim because the victim was thoroughly questioned prior to and during trial, general fishing for information is not allowed, the specifics of the acts by the family member are not relevant to his post-conviction claims, and whether State actors asked her about the other incident was an insufficient reason to depose T.B. as the answer was known. It asserts that whether State actors placed undue pressure on T.B. to testify was not relevant to his post-conviction claims, that she was lawfully subpoenaed and legally obligated to testify, and that, even if the question was relevant to his State misconduct claims, he failed to show that his claim was based on information not known at the time of the original trial and appropriate for post-conviction. It also contends that the post-conviction court did not abuse its discretion because the record does not show that the court prevented Feyka from introducing testimony of the victim or her parents, did not quash a subpoena or issue a protective order, and simply granted the State's alternative request that a hearing be conducted to address the matter. It argues that Feyka did not receive ineffective assistance of post-conviction counsel.

[21]     With respect to Feyka's claim that the post-conviction court abused its discretion in denying his request to depose or subpoena T.B. and her parents, the management of discovery is within the sound discretion of the post-conviction court, and we will not reverse a court's decision on discovery absent an abuse of discretion. *See Roche v. State*, 690 N.E.2d 1115, 1133 (Ind. 1997), *reh'g denied*. "Due to the fact-sensitive nature of discovery matters, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal," and "[d]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Hinkle v. State*, 97 N.E.3d 654, 664 (Ind. Ct. App. 2018) (quoting *Mut. Sec. Life Ins. Co. v. Fid. & Deposit Co.*, 659 N.E.2d 1096, 1103 (Ind. Ct. App. 1995), *trans. denied*), *trans. denied*.

[22]     Feyka does not point to the record to support the argument that the post-conviction court refused to hear evidence from T.B.'s parents. In arguing for the admission of T.B.'s testimony, Feyka's counsel asserted that he wanted to ask T.B. "whether anyone had asked her about the other matter" and "aspects of that case." Post-Conviction Transcript Volume II at 23. He argued that "there may be inconsistencies in the child's testimony before the trial court that I believe are relevant for this Court to consider as far as the credibility of the witnesses and why that wasn't impeached at trial." *Id.* We cannot say that the post-conviction court abused its discretion in denying Feyka's request to subpoena or depose T.B. or her parents at the evidentiary hearing. *See Hinkle*, 97 N.E.3d at 666 (holding that petitioner's discovery requests in the post-conviction process were improper fishing expeditions, not attempts to vindicate

actual claims, and concluding that the post-conviction court did not abuse its discretion when it denied his motion to compel).

[23]     As for Feyka's argument regarding his post-conviction counsel, the Indiana Supreme Court has summarized the method by which we are to review claims of ineffective assistance of post-conviction counsel:

> This Court declared its approach to claims about performance by a post-conviction lawyer in *Baum v. State*, 533 N.E.2d 1200 (Ind. 1989). We observed that neither the Sixth Amendment of the U.S. Constitution nor article 1, section 13 of the Indiana Constitution guarantee the right to counsel in post-conviction proceedings, and explicitly declined to apply the well-known standard for trial and appellate counsel of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). *Baum*, 533 N.E.2d at 1201. The *Baum* Court noted that post-conviction pleadings are not regarded as criminal actions and need not be conducted under the standards followed in them. *Id.* We held unanimously that a claim of defective performance "poses no cognizable grounds for post-conviction relief" and that to recognize such a claim would sanction avoidance of legitimate defenses and constitute an abuse of the post-conviction remedy. *Id.* at 1200-01.

> We therefore adopted a standard based on principles inherent in protecting due course of law—one that inquires "if counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court." *Id.* at 1201. As Justice DeBruler explained later, speaking for a majority of us, it is "not a ground for post-conviction relief that petitioner's counsel in a prior post-conviction proceeding did not provide adequate legal assistance," but such a contention could provide a prisoner with a basis for replying to a state claim of prior

adjudication or abuse of process. *Hendrix v. State*, 557 N.E.2d 1012, 1014 (Ind. 1990) (DeBruler, J., concurring).

*Graves v. State*, 823 N.E.2d 1193, 1196 (Ind. 2005).

[24] With respect to Feyka's claim that his post-conviction counsel failed to investigate, he does not mention any witnesses other than T.B. or her parents in his argument section. To the extent Feyka asserts that his post-conviction counsel was ineffective because he failed to present evidence from trial counsel, we observe that, while Feyka's post-conviction counsel indicated that he would present the court with Attorney McGuinness's affidavit and the record does not contain the affidavit, the prosecutor stated that his expectation was that the affidavit would indicate that Attorney McGuinness did not remember any of the specific details of the case. Further, Feyka's post-conviction counsel replied: "Or any strategic or tactical reasons for having not done things. And that's what we anticipate." Post-Conviction Transcript Volume II at 33.

[25] At the May 16, 2013 hearing, Feyka's post-conviction counsel introduced an order on disposition of the CHINS matter, a deposition of Feyka's daughter, and the record from the direct appeal. During the October 31, 2014 hearing, Feyka's post-conviction counsel argued for deposing T.B. At the February 11, 2016 hearing, Feyka's counsel indicated that two of his subpoenaed witnesses did not appear but made an offer of proof with respect to their testimony. He also questioned Feyka. Further, he filed a motion to correct error following the court's denial of the petition for post-conviction relief.

Based upon the record, we cannot say that Feyka was deprived of a procedurally fair post-conviction hearing. *See Graves*, 823 N.E.2d at 1197 (affirming the post-conviction court's denial of relief when post-conviction counsel appeared at the post-conviction relief hearing and directly examined the petitioner).

For the foregoing reasons, we affirm the denial of Feyka's petition for post-conviction relief.

Affirmed.

Baker, J., and Riley, J., concur.