## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 17 2020, 10:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Hanson
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James B. Jenkins, III, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | July 17, 2020 <br><br> Court of Appeals Case No. 19A-CR-2803 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable David M. Zent, Judge <br><br> Trial Court Cause No. 02D05-1808-FA-9 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, James Jenkins was found guilty of two counts of child molesting, a Class A felony and Class C felony. Jenkins appeals his convictions, raising one issue for our review: whether the State presented sufficient evidence to support his convictions. Concluding the State produced sufficient evidence, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict are as follows. In February of 2004, twenty-two-year-old Jenkins moved in with Amber Schroeder, her daughter, H.S., who was between four and five years old, and her son, J.S., who was one or two. He moved in to help Schroeder with the children because their biological father, Jenkins' cousin, had died in December of 2003. In early 2005, the family moved to a new apartment complex that, among other amenities, had a pool. Jenkins stayed at home with the children while Schroeder was at work. Jenkins and Schroeder had a "strictly platonic" relationship when Jenkins moved in, but they eventually started dating and had a child together in 2006. Transcript, Volume 2 at 244.

[3] On August 18, 2015, Jenkins was arrested on charges unrelated to the present case. Because of those charges, Schroeder asked H.S. and her siblings if Jenkins had ever done anything to them; H.S. denied that she had ever been touched inappropriately by Jenkins. *See id*. at 213. But in late 2017, H.S. told Schroeder

and her grandfather that Jenkins had molested her. H.S. initially did not want her mother to report the molestation but after talking with counselors at the Women's Bureau, she changed her mind and allowed her mother to call the police. In January of 2018, Schroeder called the Fort Wayne Police Department and reported that H.S. claimed that Jenkins had raped her. H.S. underwent a forensic interview. The details of the interview were not revealed other than the fact that H.S. said Jenkins raped her three or four times. *See id*. at 222. The State subsequently charged Jenkins with one count of child molesting as a Class A felony and one count of child molesting as a Class C felony for acts committed between May 1, 2005 and June 6, 2007.

[4]     At trial, H.S. identified Jenkins as the perpetrator of her abuse. H.S. recalled that Jenkins would take her and her siblings to their apartment complex's swimming pool almost every day. He would have H.S. sit on his lap facing him in the pool and would move his penis around, touching H.S.'s vagina. *See id*. at 206. Because H.S. was very young, she "didn't really know what it was" but to anyone watching, it would just look like Jenkins "was holding his child." *Id*. at 207. H.S. recalled that this went on for a couple of years.

[5]     At least five times, Jenkins told the other children to stay downstairs and he took H.S. to her mother's room,  laid her down on the bed, "put the SpongeBob movie on," "put a towel over [her] head," and took off her underwear. *Id*. at 207-09. H.S. described Jenkins putting a "liquidy" substance on her and feeling "a lot of pressure [that] hurt." *Id*. at 208. Although Jenkins was usually on top of her, restricting her movements, on one occasion, H.S. was able to lift the

towel from her face and saw Jenkins "putting his penis inside of [her]." *Id.* H.S. did not tell anyone what was happening because she was scared. Specifically, she did not tell her mother because she did not "want to be a burden on anybody. It's very shameful for me, so, it didn't mean a lot to ever say anything in the first place[.]" *Id.* at 213.

[6] J.S., H.S.'s brother, who was also living in the apartment when Jenkins was there, testified that he noticed Jenkins sitting H.S. on his lap and hugging her "like all the time." *Id.*, Vol. 3 at 47. According to J.S., "wherever [H.S.] was[, Jenkins] was." *Id.* at 48. Almost every time Jenkins took the children to the pool, he would take H.S. upstairs to change while leaving the other children downstairs. *Id.*

[7] The jury found Jenkins guilty as charged. The trial court sentenced Jenkins to a total of fifty-eight years to be served in the Indiana Department of Correction. Jenkins now appeals his convictions.

# Discussion and Decision

## I. Standard of Review

[8] Jenkins challenges the sufficiency of the evidence at trial supporting his convictions. Our standard of review when reviewing claims of sufficiency of the evidence is well-settled: we neither reweigh the evidence nor judge the credibility of witnesses. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Instead, we consider only the probative evidence and reasonable inferences therefrom

supporting the verdict and consider conflicting evidence most favorably to the verdict. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. That is, the verdict will not be disturbed if there is sufficient evidence of probative value to support the conclusion of the trier of fact. *Boyer v. State*, 883 N.E.2d 158, 162 (Ind. Ct. App. 2008).

## II. Sufficiency of the Evidence

The crux of Jenkins' argument is that H.S.'s testimony by itself is insufficient to support his convictions because it was "inconsistent and unreliable" and her age at the time of the events and the timing of her disclosures "undermines the credibility and probative value" of her testimony. Appellant's Brief at 15, 18.

## A. Class A Felony Child Molesting

To convict Jenkins of child molesting as a Class A felony, the State was required to prove beyond a reasonable doubt that Jenkins, being at least twenty-one years old, performed or submitted to sexual intercourse with H.S., who was under fourteen years old. *See* Ind. Code § 35-42-4-3(a)(1) (1998). A conviction for child molesting may stand on the uncorroborated testimony of a minor witness. *Feyka v. State*, 972 N.E.2d 387, 393 (Ind. Ct. App. 2012), *trans. denied*. And this is true even if there are inconsistencies in the victim's own testimony. *Id.*

[11] The State presented sufficient evidence to support Jenkins' conviction for child molesting as a Class A felony. Jenkins does not dispute that he was older than twenty-one years of age or that H.S. was under fourteen years of age during the time of the incidents. At trial, H.S. testified in detail about the repeated molestations she endured between 2005 and 2007. She testified that on several occasions, Jenkins took her to her mother's room after telling the other children to stay downstairs. Jenkins laid her down on the bed, put on her favorite movie, put a towel over her head, and took off her underwear. Although H.S. did not know exactly what was going on, she recalled feeling a "liquidy" substance and feeling "a lot of pressure [that] hurt." Tr., Vol. 2 at 208. Once, H.S. was able to lift the towel and saw Jenkins "putting his penis inside of [her]." *Id*. Because a conviction of child molesting may stand on the uncorroborated testimony of a minor victim, H.S.'s testimony alone is sufficient evidence from which the jury could conclude that Jenkins was guilty of child molesting as a Class A felony.

## B. Class C Felony Child Molesting

[12] A conviction of child molesting as a Class C felony requires the State to prove beyond a reasonable doubt that Jenkins performed or submitted to any fondling or touching of H.S., who was under fourteen years old, with the intent of arousing or satisfying Jenkins' or H.S.'s sexual desires. *See* Ind. Code § 35-42-4-3(b) (1998).

[13] At trial, H.S. testified that when Jenkins watched the children while her mother was at work, he would frequently take them to the pool. While they were in the pool, Jenkins would sit H.S. on his lap facing him and would move his penis

around touching her vagina. H.S. said she "didn't really know" what was happening in the pool because she was "three (3) at the time." Tr., Vol. 2 at 207. Jenkins argues that H.S.'s testimony that she was three years old when the pool incidents occurred is a "significant discrepancy" because the other evidence showed it was impossible for the incidents to have occurred when H.S. was three. Appellant's Br. at 15-16 (noting that when H.S. was three, the evidence showed her father was still alive, Jenkins had not yet come to live with the family, and they had not yet moved to the apartment with the pool). He argues the "inconsistency and impossibility" of H.S.'s testimony regarding her age makes her testimony as a whole "highly suspect." *Id.* at 17. However, H.S. also testified that she was born in 2000 and was four or five when Jenkins came to stay with them, which is consistent with other testimony about when Jenkins came to help Schroeder with the children and when the family moved to the apartment with the pool. "Where contradictory or inconsistent testimony is presented at trial, it is up to the jury to resolve such conflicting testimony." *Young v. State*, 143 N.E.3d 965, 972 (Ind. Ct. App. 2020), *trans. denied*. And in our review, we consider conflicting evidence most favorably to the verdict. *See Boggs*, 928 N.E.2d at 864.

[14] Notwithstanding any inconsistences in H.S.'s testimony about her age, other evidence puts the events within the timeframe alleged, and H.S.'s testimony about what occurred in the pool was unequivocal, and this was sufficient evidence that Jenkins performed or submitted to fondling or touching of H.S. *See Feyka,* 972 N.E.2d at 393-94 (finding sufficient evidence to sustain child

molesting convictions despite "the conflicting testimony and some inconsistencies in [the victim's] own statements"). Further, under the circumstances, a fact-finder could reasonably infer that Jenkins fondled or touched H.S. in such a manner that he had the intent to arouse his desires or those of H.S. when he bounced her on his lap, touching her genitals with his penis. *See Carter v. State*, 31 N.E.3d 17, 30 (Ind. Ct. App. 2015) (noting the element of intent "may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual consequence to which such conduct usually points"), *trans. denied*.

[15] In sum, we reject Jenkins' argument that H.S.'s testimony was unreliable and inconsistent and supports only a *suspicion* of guilt. *See* Appellant's Br. at 14. The jury was in the best position to hear all of the evidence, weigh H.S.'s testimony, observe her demeanor, and ultimately, determine that H.S. was a credible witness. We will not second-guess the jury's determination and to do so would require us to reweigh the evidence and reassess the credibility of the witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146. The evidence as a whole supports the fact-finder's conclusion that the State proved beyond a reasonable doubt that Jenkins committed the crimes of child molesting.

# Conclusion

[16] The State presented sufficient evidence to support Jenkins' convictions of child molesting. We therefore affirm his convictions.

Affirmed.

May, J., and Vaidik, J., concur.