## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 13 2015, 10:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Chad A. Montgomery
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard A. Gill, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 13, 2015 <br><br> Court of Appeals Case No. 79A02-1408-CR-594 <br><br> Appeal from the Tippecanoe Superior Court. <br><br> The Honorable Randy J. Williams, Judge. <br><br> Cause No. 79D01-1311-FA-16 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Richard A. Gill (Gill), appeals his conviction of three Counts of child molesting, Class A felonies, Ind. Code § 35-42-4-3(a)(1) (2012); one Count of sexual misconduct with a minor, a Class B felony, I.C. § 35-42-4-9(a)(1) (2012); one Count of sexual misconduct with a minor, a Class C felony, I.C. § 35-42-4-9(b)(1) (2012); and five Counts of child molesting, Class C felonies, I.C. § 35-42-4-3(b) (2012).

We affirm.

## ISSUES

Gill raises three issues on appeal, which we restate as follows:

(1) Whether the State presented evidence beyond a reasonable doubt to support Gill's conviction;

(2) Whether the trial court abused its sentencing discretion; and

(3) Whether Gill's sentence is inappropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

In approximately 2002, Gill began dating Misty Ramirez (Ramirez). Soon thereafter, Ramirez and her three young children—sons, B.B., born June 26, 1997, and A.R., born July 10, 2001; and daughter, V.B., born November 20, 1998—moved into Gill's house. At some point, they relocated to a larger home, located at 1718 Rainey Street in Lafayette, Tippecanoe County, Indiana. On January 4, 2005, Ramirez gave birth to her third son, L.G.—her only child

with Gill. As neither Gill nor Ramirez were legally divorced from their first spouses, they never got married. However, they lived together for over eleven years, and during that time, Ramirez' children considered Gill to be their stepfather. For the majority of their relationship, Gill was unemployed, so he primarily stayed home with the children while Ramirez worked.

[5] When V.B. was about seven or eight years old, Gill asked her to come into his bedroom one morning when Ramirez was not at home and while her brothers were still asleep. Gill asked V.B. to rub and scratch his back, and V.B. complied. At Gill's request, V.B. moved her hands lower so that she was rubbing Gill's hips. Gill then instructed V.B. to lay in front of him so that he could scratch her back. Gill began rubbing V.B.'s back but then moved down to her hips and eventually reached over to rub "the front part of [her] vagina" over the top of her pajamas. (Tr. p. 131). V.B. indicated that she could feel Gill's erect penis—*i.e.*, "a bump"—pressed against her butt. (Tr. p. 132). As an excuse to "get away" from Gill, V.B. stated that she needed to use the restroom. (Tr. p. 132). V.B. did not report the incident to Ramirez or anyone else.

[6] In January of 2008, just after his third birthday, L.G. became very ill. After he was diagnosed with viral meningitis, L.G. was transported to Riley Hospital for Children in Indianapolis, Indiana, where he remained hospitalized for nearly three months. Throughout L.G.'s hospitalization, Gill stayed with him during the week and Ramirez remained in Lafayette to work and to care for the other children. Then, on the weekends, Ramirez stayed with L.G. in Indianapolis while Gill returned to Lafayette to care for B.B., V.B., and A.R. On those

weekends that Gill was home with the children, he would ask V.B. to come into his bedroom in order to scratch his back and would end up "just rubbing [and] touching [her] vagina." (Tr. p. 136). At least once, A.R. came downstairs and saw V.B. on Gill's bed with his hand "[i]n her private part." (Tr. p. 193). When A.R. questioned V.B. about what he saw, V.B. refused to discuss it. Similarly, B.B. once walked past Gill's bedroom and saw V.B. sitting on the floor with Gill's hand down the front of her skirt. When Gill saw that B.B. was watching, he removed his hand without saying anything.

[7] On March 30, 2008, L.G. was released from the hospital. On some night thereafter, V.B. was asleep in her bed when she awoke to "a bad sharp pain in [her] butt." (Tr. p. 133). She turned her head and saw Gill standing over her with his pants down, and she realized that her own pajama pants had also been pulled down. The next day, V.B. complained to Ramirez that her butt was sore and bleeding. Believing that her skin was "probably just dry[,]" Ramirez suggested that V.B. apply lotion to her butt. (Tr. p. 135).

[8] For a few years, Gill did not commit any further acts of molestation against V.B. However, when V.B. turned twelve, Gill started fondling her again. He regularly asked V.B. for hugs, during which he would place his hands inside her pants and "rub on the front part of [her] vagina." (Tr. p. 138). Gill would also ask V.B. to grab his penis. Gill explained to V.B. that "it was normal to mess around because [she] was young and [she] would be experienced when [she] was older." (Tr. p. 150). V.B. told her two best friends that Gill was touching

her, but when they insisted on reporting the matter to the school counselor, V.B. said that she had lied and stopped speaking to her friends.

[9] Between the ages of twelve and fourteen, Gill frequently touched V.B. with his penis. "He would spit on his hand and . . . rub it on his thing and he would spit on his hand and rub it on the inner of [her] vagina." (Tr. p. 147). At times, Gill attempted to kiss V.B., but she would only allow him to kiss her on the cheek. Gill would also kiss V.B.'s neck, and he would tell her to squeeze her breasts together while he fondled and licked them. B.B. often would see Gill hugging V.B. with his hands placed on her butt, and one evening after he had been in a fight with Gill, B.B. told Ramirez that Gill was touching and hurting V.B. B.B. said that Ramirez "yelled at [V.B.] and said . . . if you're telling the truth I don't want you in this house." (Tr. p. 214). According to Ramirez, when B.B. mentioned the sexual abuse, she questioned V.B., but V.B. denied it.

[10] Gill had vaginal intercourse with V.B. for the first time when she was thirteen years old. He took her down to the basement, pulled her pants halfway down, and started rubbing her vagina and touching and licking her breasts while she touched his penis. He then told V.B. to lay down on the futon, and he removed her pants, held her legs up, and inserted his penis into her vagina. She asked him to stop because it was painful, and Gill explained that it was going to hurt because it was her first time. When V.B. continued to complain about the pain, Gill suggested that they "try it from the butt" instead. (Tr. p. 139). Gill inserted his penis into V.B.'s anus, which "hurt worse than it did on the front side." (Tr. p. 139). She asked Gill to stop, and she observed that semen came

out of his penis "when he pulled it out." (Tr. p. 140). V.B. stated that her butt "started bleeding again after that." (Tr. p. 139). On another occasion when V.B. was thirteen years old, Gill and V.B. were standing in the basement doorway, and he directed V.B. to pull her pants down and proceeded to rub his penis on V.B.'s vagina. He then put a condom on his penis and inserted it in her vagina, causing V.B. pain. However, a noise on the staircase prompted Gill to stop, so V.B. pulled up her pants and ran to the restroom.

[11] In December of 2012, a month after V.B.'s fourteenth birthday, Gill again initiated sexual intercourse with V.B. Because V.B. was experiencing her first menstrual cycle, the penetration caused her to get blood on the carpet, so Gill stopped in order for V.B. to clean up the blood. For the next few months, V.B. did not menstruate, and she became concerned that she was pregnant. V.B. shared this information with Gill, who advised her to punch herself in the stomach. In February of 2013, V.B. stole a pregnancy test from a CVS, which confirmed that she was not pregnant. Gill told V.B. that if she ever told anyone, she and her siblings would be sent to different foster homes.

[12] On March 11, 2013, allegations of physical and sexual abuse concerning V.B. were reported to the Indiana Department of Child Services (DCS). DCS arranged for V.B. to be picked up from school and transported to the Hartford House—a neutral, child-friendly environment—for a forensic interview. V.B. explicitly informed the investigator that she had never been sexually abused. The following day, a DCS assessment worker interviewed Gill, Ramirez, B.B., and A.R. at the family's home. Gill and Ramirez sat in the room during A.R.'s

interview, and A.R. indicated that he was not aware of any sexual abuse. B.B., who was interviewed separately, also denied having any knowledge about sexual abuse involving V.B. Gill informed DCS "[t]hat he would never touch [V.B.]. He loved her like they were his children and he would never do that to her." (Tr. p. 54). DCS concluded that the allegations were unsubstantiated.

[13] In early 2013, V.B. began dating a schoolmate, E.R. During their spring break, E.R. stayed at V.B.'s house. On March 28, 2013, while Ramirez was out of the house, V.B. and E.R. were upstairs watching television. When V.B. excused herself to use the restroom downstairs, Gill intercepted her and proceeded to fondle her. Gill pulled V.B.'s pants halfway down and was rubbing his penis against her vagina when they heard a creek on the staircase and realized that E.R. had witnessed their interaction. E.R. confronted Gill about what he saw, but Gill tried to convince E.R. that nothing had happened. The next night, E.R. wrote a letter to V.B. stating that he needed to take a break from their relationship as he could not deal with the fact that Gill was "touching" her. (State's Exh. 24).

[14] At the beginning of April 2013, Ramirez contacted her sister, Melissa Duarte (Duarte), via Facebook and stated that she needed to get herself and the children out of the house immediately. Duarte, who lives in Houston, Texas, drove through the night. When she reached Lafayette on April 9, 2013, Duarte was concerned about Gill's reaction to removing the children from the home, so she contacted the Lafayette Police Department for assistance. As Duarte was driving Ramirez and all four children out of town, Ramirez indicated that Gill

had been sexually molesting V.B., at which point V.B. broke down crying. Duarte dropped Ramirez off in Kentucky to meet a boyfriend and then continued on to Texas with the children. Along the way, the children opened up to Duarte about what had been going on in their home. On April 10, 2013, Duarte took V.B. to Texas Children's Hospital for a sexual assault examination because V.B. "was complaining of dysuria, which is pain with urination, vaginal discharge and then rectal pain." (Tr. p. 300). The Texas Department of Family and Protective Services subsequently interviewed V.B., B.B. and A.R., all of whom confirmed that Gill had been molesting V.B. The three children also explained that they had initially denied the allegations because they were afraid they would be punished and that their family would be split up. Texas authorities relayed the results of their investigation to the Indiana authorities.

[15] On November 13, 2013, the State filed an Information, charging Gill with Counts I, II, IV, and V, child molesting as Class A felonies; and Count III, attempted child molesting, a Class A felony. On March 11, 2014, the State filed an amended Information, adding Counts VI, VII, IX, X and XI, child molesting as Class C felonies; and Counts VIII and XII, sexual misconduct with a minor as Class C felonies. On July 15-17, 2014, a jury trial was conducted. When the State rested its case-in-chief, it moved to amend Count V of the Information from a Class A felony child molesting to a Class B felony sexual misconduct with a minor. With no objection from Gill, the trial court granted the State's motion. At the close of the evidence, the jury returned a guilty verdict on

Counts I, II, IV, V, VI, VII, VIII, IX, X, and XI, and the trial court entered a judgment of conviction on the same. Gill was acquitted of Counts III and XII.

[16] On August 14, 2014, the trial court conducted a sentencing hearing and imposed terms of forty years on Count I, thirty years each on Counts II and IV, ten years on Count V, eight years each on Counts VI and VII, and four years each on Counts VIII, IX, X, and XI. The trial court ordered the sentences for Counts I, VI, and VII to run concurrently, the sentences on Counts II, IV, IX, X, and XI to run concurrently, and the sentences on Counts V and VIII to run concurrently. The trial court further ordered that the three concurrent sentencing groups should run consecutively, resulting in an aggregate sentence of eighty years, fully executed in the Indiana Department of Correction.

[17] Gill now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[18] Gill claims that there is insufficient evidence to support his conviction as to Counts I, II, and IV, child molesting as Class A felonies; and Count V, sexual misconduct with a minor as a Class B felony. Our standard of review for sufficiency of the evidence claims is well established. On appeal, this court will not reweigh the evidence or assess the credibility of witnesses, and "[w]e consider only the probative evidence and reasonable inferences supporting the verdict and consider conflicting evidence most favorable to the verdict." *Stetler v. State*, 972 N.E.2d 404, 406 (Ind. Ct. App. 2012), *trans. denied*. We will uphold

the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* Thus, it is "not necessary that the evidence overcome every reasonable hypothesis of innocence." *Feyka v. State*, 972 N.E.2d 387, 392 (Ind. Ct. App. 2012), *review denied*. Rather, we will find sufficient evidence so long as an inference may reasonably be drawn therefrom to support the verdict. *Id.* We now address each Count in turn.[1]

### A. *Count I*

Count I of the Information charged Gill with child molesting as a Class A felony. In order to uphold his conviction, the State was required to prove beyond a reasonable doubt that Gill, being at least twenty-one years of age, "perform[ed] or submit[ted] to sexual intercourse or deviate sexual conduct" with V.B. when she was less than fourteen years old. I.C. § 35-42-4-3(a)(1) (2012). Pursuant to Indiana Code section 35-31.5-2-302, "'[s]exual intercourse' means an act that includes any penetration of the female sex organ by the male sex organ." On the other hand, "[d]eviate sexual conduct" is defined, in part, as "an act involving . . . a sex organ of one (1) person and the mouth or anus of another person." I.C. § 35-31.5-2-94(1) (2012).

In this case, the Information refers to "an act involving the penis of [Gill] and the anus of V.B." (Appellant's App. p. 23). As the State clarified at trial, this charge pertains to the instance in which V.B. was awakened by a sharp pain in

---

[1] Gill does not challenge the sufficiency of the evidence supporting his conviction of Counts VI through XI.

her anus when she was approximately nine years old. Gill now contends that no inference can be drawn from the evidence to establish that he "placed his penis in [V.B.'s] anus." (Appellant's Br. p. 10). Specifically, Gill argues that the evidence is insufficient because V.B. did not testify that she actually observed Gill's penis or the penetration of her anus therewith; the hospital records do not specify that her anus was evaluated; and there were no eye witnesses to the event. (Appellant's Br. p. 10). We disagree.

[21] It is well established that "[t]he uncorroborated testimony of the victim, even if the victim is a minor, is sufficient to sustain a conviction of child molesting." *Feyka*, 972 N.E.2d at 393. "This is true even if there are inconsistencies in the child victim's own testimony." *Id.* In the present case, V.B. testified that she felt a sharp pain in her butt and saw that Gill was standing over her with his pants pulled down. The next day, she was sore and informed Ramirez that her butt was bleeding. During the trial, the State asked V.B. whether she had felt Gill's penis inside her anus or just "between [her] buttocks," and V.B. unambiguously stated that Gill had penetrated her anus. (Tr. p. 134).

[22] Our court has previously held that "*contact* with the anus" is all that is required to constitute sexual deviate conduct. *Riehle v. State*, 823 N.E.2d 287, 293 (Ind. Ct. App. 2005) (emphasis added), *trans. denied*. Here, V.B.'s testimony clearly establishes that Gill made contact with her anus, and based on the fact that Gill's pants had been pulled down, the jury could reasonably infer that he used his penis to do so. *See Mastin v. State*, 966 N.E.2d 197, 202 (Ind. Ct. App. 2012) ("Penetration can be inferred from circumstantial evidence."), *trans. denied*.

Because it was within the province of the jury to find V.B.'s testimony credible, we find that there is sufficient evidence to affirm Gill's conviction as to Count I, Class A felony child molesting. *See Feyka*, 972 N.E.2d at 393.

## B. *Count II*

Count II of the Information also charged Gill with child molesting as a Class A felony, stating that "on a different occasion than Count I," Gill performed or submitted to an act involving his penis and V.B.'s anus. (Appellant's App. p. 24). Gill contends that "[t]he record does not reflect any testimony that could reasonably be inferred that [he] performed or submitted to . . . deviate sexual conduct involving his penis and V.B.'s anus" distinct from the evidence relied upon in Count I. (Appellant's Br. p. 11). Again, we disagree.

V.B. testified that when she was thirteen years old, Gill took her down to the basement and engaged in sexual intercourse with her. However, when V.B. indicated that it was too painful to continue, Gill suggested that they "try it from the butt." (Tr. p. 139). According to V.B., Gill's penis went inside her anus, causing her to bleed. Again, as "[t]he uncorroborated testimony of a child victim is sufficient to support a conviction for child molesting[,]" we find that there is sufficient evidence to support Gill's conviction as to Count II, Class A felony child molesting. *Kindred v. State*, 973 N.E.2d 1245, 1259 (Ind. Ct. App. 2012), *trans. denied*.

## C. *Count IV*

Count IV of the Information charged Gill with a third count of Class A felony child molesting, alleging that Gill performed or submitted to an act involving his penis and V.B.'s vagina. On appeal, Gill contends that the evidence is insufficient to sustain his conviction on this charge because "no inference can be drawn from V.B.'s testimony that [he] placed his penis in her vagina. The only statement was from V.B., no eye witnesses, and no sexual evaluation performed." (Appellant's Br. p. 11). Again, we find no merit in Gill's argument. As we have already stated, eye witnesses and medical evaluations are not required to establish the crime of child molestation. *See Feyka*, 972 N.E.2d at 393.

At trial, the State tied this charge to the encounter in which Gill wore a condom. V.B. testified that when she was thirteen years old, Gill—after "rubbing [his penis] on the front of [her] vagina"—put a condom on and "tried going in but it hurt." (Tr. p. 142). V.B. explained that they were subsequently interrupted by a noise on the staircase, which prompted her to pull up her pants and retreat to the restroom. In order to prove that a defendant performed or submitted to sexual intercourse, the child molestation statute "does not require that the vagina be penetrated, only that the female sex organ be penetrated." *Mastin*, 966 N.E.2d at 202. Thus, proof of the slightest "[p]enetration of the external genitalia, or vulva, is sufficient" to sustain a conviction. *Id.* Accordingly, we find that V.B.'s testimony that Gill tried to insert his penis in her vagina and that it caused her pain is sufficient to establish penetration—*i.e.*,

sexual intercourse. Therefore, we affirm his conviction as to Count IV, Class A felony child molesting.

## D. *Count V*

Count V of the Information, as amended, charged Gill with sexual misconduct with a minor as a Class B felony. In order to sustain Gill's conviction, the State had to prove beyond a reasonable doubt that Gill, being at least twenty-one years of age, "perform[ed] or submit[ted] to sexual intercourse or deviate sexual conduct" with V.B. when she was "at least fourteen (14) years of age but less than sixteen (16) years of age." I.C. § 35-42-4-9(a)(1) (2012). The Information specifically alleges that Gill performed or submitted to an act involving his penis and V.B.'s vagina when V.B. was fourteen years old.

Gill contends that there is no evidence from which it "could reasonably be inferred that [he] performed or submitted to sexual intercourse . . . when V.B. was fourteen (14) years of age." (Appellant's Br. p. 12). Rather, he asserts that "[t]he only such acts that were testified to by V.B. regarding vaginal sex" involved two instances when she was thirteen years old, as charged in Counts III and IV. (Appellant's Br. p. 12). We, again, disagree.

V.B.'s fourteenth birthday was on November 20, 2012. V.B. distinctly remembered that she was fourteen years old at the time of her first menstrual cycle. She testified that in December of 2012, Gill "wanted to do something" with her. (Tr. p. 145). However, she was menstruating at the time, so when Gill was "putting it in[,]" she "got blood on the carpet." (Tr. p. 145).

According to V.B., Gill stopped because she "had to clean up the . . . spot of blood on the floor." (Tr. p. 145). For the next few months, V.B. did not menstruate, so she became concerned that Gill had impregnated her. At trial, V.B. described that Gill had instructed her to punch herself in the stomach in case she was pregnant, and she further admitted that she had stolen a pregnancy test, which yielded a negative result. Based on this evidence, we find that a jury could reasonably infer that Gill had performed or submitted to sexual intercourse with V.B. when she was fourteen years old, and we affirm Gill's conviction as to Count V, Class B felony sexual misconduct with a minor.

## II. *Trial Court's Sentencing Discretion*

[30] Next, Gill claims that the trial court abused its discretion in imposing an aggregate sentence of eighty years. Initially, we note that a Class A felony carries a term of imprisonment between twenty and fifty years, with thirty years being the advisory sentence. I.C. § 35-50-2-4 (2012). On Count I, Gill was sentenced to forty years, and on Counts II and IV, he received the advisory sentence. The minimum and maximum sentences for a Class B felony are six years and twenty years, respectively, with an advisory sentence of ten years. I.C. § 35-50-2-5 (2012). On Count V, Gill was sentenced to the advisory term. Finally, a Class C felony is punishable by a sentence ranging from two years to eight years, with an advisory sentence of four years. I.C. § 35-50-2-6(a) (2012). On Counts VI and VII, Gill was sentenced to the maximum term of eight years, and on Counts VIII, IX, X, and XI, Gill received the advisory sentence.

[31] Trial courts are vested with sound discretion in matters of sentencing and may impose any sentence that is authorized by statute. *Anglemyer v. State*, 868 N.E.2d 482, 490, *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). On appeal, we review sentencing decisions only for an abuse of discretion. *Id.* It is an abuse of discretion if the trial court's "decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)). With respect to sentencing, we may find an abuse of discretion if the trial court fails to enter a sentencing statement, enters a finding of aggravating and mitigating factors that are unsupported by the record, omits reasons that are clearly supported by the record but are advanced for consideration, or includes reasons that are improper as a matter of law. *Gomillia v. State*, 13 N.E.3d 846, 849 (Ind. 2014).

[32] In determining an appropriate sentence, the trial court identified the following aggravating circumstances: Gill's criminal history; the fact that V.B. was under the age of twelve in three of the offenses; the repetitive nature of the offenses; the fact that Gill was in a position of care and trust over V.B.; and Gill's lack of veracity. As a mitigating circumstance, the trial court noted that Gill has family support. The trial court found that the aggravating factors outweigh the mitigating factors and accordingly enhanced Gill's sentences on Counts I, VI, and VII and ordered several of the sentences to run consecutively. Gill now argues that the trial court abused its discretion by failing to state its reasons for imposing consecutive sentences.

[33] The decision to impose consecutive sentences is within the trial court's sound discretion. *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014), *trans. denied*. The trial court should state its reasoning for ordering consecutive sentences, which may be imposed based upon a single aggravating circumstance. *Id.* It is well settled that a trial court "may rely on the same reasons to impose a maximum sentence and also impose consecutive sentences." *Gellenbeck v. State*, 918 N.E.2d 706, 712 (Ind. Ct. App. 2009). Moreover, the trial court is under no obligation "to identify the aggravators that support consecutive sentences separately from the factors that support the sentence enhancement." *Smith v. State*, 770 N.E.2d 818, 821 (Ind. 2002). In this case, the trial court cited numerous aggravating circumstances, any one of which could support *both* enhanced and consecutive sentences. As such, we cannot say that the trial court abused its discretion by imposing consecutive sentences.

### III. *Appropriateness of Sentence*

[34] Finally, Gill claims that his eighty-year sentence is inappropriate in light of the nature of the offense and his character. He requests that our court revise his aggregate sentence to a term of thirty years. Notwithstanding the fact that the trial court acted within its sentencing discretion, our court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Whether a sentence is inappropriate depends upon "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and

myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). We may consider "any factors appearing in the record." *Stetler*, 972 N.E.2d at 408. "The principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Ultimately, our focus centers on "the length of the aggregate sentence and how it is to be served." *Sanchez v. State*, 938 N.E.2d 720, 722 (Ind. 2010). Here, Gill bears the burden of demonstrating that his eighty-year sentence is inappropriate. *See Stetler*, 972 N.E.2d at 408.

[35] The nature of Gill's offenses is that he repeatedly molested V.B. over a span of seven years, beginning when V.B. was only seven years old. In so doing, Gill violated a position of trust with a child who considered him to be her stepfather. Gill's sordid fondling of V.B. is despicable in itself, but he also penetrated her vagina and anus with his penis on multiple occasions without regard for the fact that he was hurting her and causing her to bleed. He tried to convince her that what they were doing was normal and that it would help her to become a more sexually experienced adult; yet, he also threatened that she would be separated from her siblings if she ever told anyone. When V.B. became concerned that she could be pregnant, Gill told his fourteen-year-old stepdaughter that she should punch herself in the stomach in an effort to terminate any possible pregnancy. And then, by his actions, Gill forced V.B. onto a criminal path by having to steal a pregnancy test.

[36] As to the character of the offender, Gill has a lengthy criminal history—all committed as an adult. In addition to two Class D felony convictions for theft and receiving stolen property and three Class A misdemeanor convictions for criminal conversion and theft, Gill failed to appear before the court in various matters on sixteen separate occasions between the ages of nineteen and twenty-nine. Five petitions to revoke probation were filed against him, one of which was found to be true and the others were dismissed pursuant to plea agreements. While none of these prior offenses were related to the charged molestations, they are indicative of Gill's proclivity for deceitful conduct and his disrespect for the court's authority. We recognize that, prior to the instant case, Gill's last conviction was in 2001. However, it is clear that Gill was not leading a law-abiding life during this gap of time as he spent at least seven of those years repeatedly molesting his stepdaughter. Furthermore, as noted by the trial court, Gill's lack of veracity throughout the trial speaks volumes about his character. Gill provided misleading information during the pre-sentence investigation, and during the trial—despite the trial court's order for a separation of witnesses—Gill contacted both Ramirez and his father to report on the testimony of other witnesses and to instruct his father about how to testify. Gill is already serving far less than the maximum sentence for the crimes that he committed, and in light of the nature of the offense and his character, we decline to revise his sentence as being inappropriate.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to uphold Gill's conviction. We further conclude that the trial court acted within its discretion in imposing consecutive sentences, and Gill's sentence is appropriate in light of the nature of the offense and his character.

Affirmed.

Bailey, J. and Barnes, J. concur